IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| | * | |
| MICHAEL W. BURTON, SR., | | |
| | * | |
| Plaintiff, | | |
| | * | CIVIL NOS.: WDQ-06-1286 |
| v. | | WDQ 06-1289 |
| | * | CONSOLIDATED |
| AMCOR FLEXIBLES, | | |
| | * | |
| Defendant. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Michael W. Burton, Sr. sued his former employer, Amcor
Flexibles ("Amcor"), for violations of Title VII of the Civil
Rights Act of 1964 ("Title VII"),[1] the Age Discrimination in
Employment Act of 1967 (the "ADEA"),[2] and the Americans with
Disabilities Act (the "ADA").[3]

Pending is Amcor's motion for summary judgment.  For the
following reasons, the motion will be granted on Burton's ADEA
and ADA claims.  On Burton's Title VII claims, Amcor's motion
will be granted on Burton's race discrimination and hostile work
environment claims, and denied on Burton's retaliation claim.

---

[1] 42 U.S.C. §§ 2000e *et seq.* (2000).

[2] 29 U.S.C. §§ 621 *et seq.* (2000).

[3] 42 U.S.C. §§ 12101 *et seq.* (2000).

1

I.   Background

Burton, an African American, worked as a press assistant at Amcor's printing facility in Hagerstown, Maryland.  Burton's job required him to use various inks, dyes, and solvents in the production of plastic bags and maintenance of print machinery.  Def.'s Supp. Mem. at 4.  Burton's heart condition forced him to retire from the U.S. Army and caused sensitivity to chemical exposure.  Pl.'s Supp. Mem. at 2.  This sensitivity allegedly led Burton to request assurances from Todd Missling, an Amcor manager, that Burton would get a respirator on his first day of work.  Burton Dep. 148:5-149:15.  Burton did not receive a respirator when he began his employment.

When hired in January 2002, Burton was 47 and the only African-American press assistant.  Burton alleges that in August 2002, he was called "Buckwheat" on two occasions.  Burton Dep. 153:14-155:20.  Burton informed his press operator, Todd Ahrens, of the remarks and Ahrens reported the incidents to Tim Bland, Amcor's Director of Operations.  Bland investigated Burton's claim, but could not determine whether the statements had been made.  Bland Dep. 79:5-12.

On August 27, 2002, printing errors occurred during Burton's shift.  Burton and his press operator were held responsible, and on September 4, 2002, Amcor issued them final written warnings and reduced their pay levels.  Def.'s Supp. Mem. Exs. 7-9.  On

2

that date, Burton went to Bland's office to discuss the warning
and an argument ensued.  Before these incidents, Burton had not
received any formal warnings.  Burton Dep. 73:2-9.

After Burton's meeting with Bland, Amcor allegedly promoted
two employees in their twenties to press operator positions.
Pl.'s Supp. Mem. at 4.  Amcor also hired Douglas Crist, a 39
year-old Caucasian with significant experience in the print
industry, as a press assistant, and began training him as a press
operator.

Over the next several months, Burton's health deteriorated.
On September 28, 2002, Burton was hospitalized with chest pains.
Pl.'s Supp. Mem. at 5.  Burton's doctor informed him that he
needed a respirator, but after a meeting in October 2002 with
Amcor managers, Burton's request was refused.  *Id.*  Burton was
again hospitalized in December 2002 because of exposure to
chemicals, and a subsequent request for a respirator was refused.
*Id.*

Burton's work performance suffered.  Burton received an oral
warning on March 3, 2003 for poor attendance and a written
warning on April 11, 2003 concerning his job performance and
attitude.  Def.'s Supp. Mem. Exs. 9-10.  Burton again was
hospitalized on April 16, 2003 for exposure to chemicals, and the
next day informed Amcor management of his need for a respirator
and his intent to file a complaint with the Equal Employment

3

Opportunity Commission (the "EEOC").  Pl.'s Supp. Mem. at 6.
Then Amcor allegedly terminated Burton, and he was reinstated
only after Amcor was contacted by Burton's counsel.  *Id.*  Burton
was then fitted by a physician for a respirator, which he wore
for the next two months.  Burton filed a complaint with the EEOC
on April 24, 2003.

On July 20, 2003, Burton was hospitalized with dehydration
as a result of wearing the respirator.  The next day, Burton
confronted Ahrens in the parking lot and made several disparaging
comments about Amcor management.  Def.'s Supp. Mem. Ex. 11.  On
July 30, 2003, Amcor terminated Burton's employment.

On April 15, 2006 Burton received a right to sue notice from
the EEOC and subsequently filed two *pro se* complaints in this
Court.  Those complaints have been consolidated in this action.

II.  Analysis

Amcor has moved for summary judgment on all claims, arguing
that: (1) Burton cannot establish racial discrimination under
Title VII; (2) Burton did not allege any facts indicating age
discrimination; and (3) Burton's disability is not protected by
federal law.

A. Standard of Review

Under Rule 56(c), summary judgment is appropriate when there
is no genuine issue of material fact and the moving party is
entitled to judgment as a matter of law.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) (internal quotation marks omitted)).  The opposing party, however, must produce evidence upon which a reasonable fact finder could rely.  *Celotex*, 477 U.S. at 324.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

B. Race Discrimination

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. 2000e-2(a)(1).  A plaintiff may avoid summary judgment and establish a claim of intentional race discrimination under two methods of proof: 1) a

"mixed motive" framework[4] or 2) a "pretext" framework.  *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc).

Under the pretext framework, the plaintiff must establish, by a preponderance of the evidence, a prima facie showing of racial discrimination.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  If the plaintiff establishes a prima facie case, then the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Hill*, 354 F.3d at 285.  If the employer provides evidence of such a reason, the burden shifts to the plaintiff to establish that the employer's explanation was a pretext for discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *see also Burdine*, 450 U.S. at 256.

1. Failure to Promote

Burton contends that he was not promoted to the press operator position because of his race.  To establish a prima facie case, Burton must show that: (1) he is a member of a protected group; (2) there was a specific position for which he applied; (3) he was qualified for the position; and (4) his

---

[4] Direct evidence of racial discrimination is generally required for mixed-motive analysis, *see Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), and since neither party addressed the mixed-motive framework in this action, the Court declines to address Burton's claim under this alternative method of proof.

application was rejected under circumstances giving rise to an inference of unlawful discrimination. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998); *see also Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994).

Amcor contends that: (1) Burton did not apply for the position; and (2) if he did apply, he was not as qualified as the candidate selected.  Burton counters that a formal application was not required and that he was not considered for the position because of his race.

Whether an employer's promotion process is formal or informal dictates whether an employee must apply for a vacancy. *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004). The more formal the process, the more likely an application is needed.  *Id.* at 430-31.

Burton argues that Amcor had an informal promotion process where employees were handpicked by supervisors to begin training for supervisory positions.  Bland stated that although sometimes press operator vacancies were posted and applications were required, at other times, managers who knew of coming vacancies would train press assistants for the position in advance.  Bland Dep. 75:1-16.  Burton indicated his interest in becoming a press operator, Burton Dep. 68:12-14, and his failure to apply for the position does not defeat his prima facie case.

Burton also argues that he was qualified for the position.

But rather than focusing on his qualifications, Burton notes that three other press assistants were trained to become press operators during his tenure at Amcor.   The evidence, however, is that on September 4, 2002, Burton and his then-press operator received "final" written warnings for printing errors that occurred on their shift.[5]   Burton was faulted for misplacing print rolls, leaving the press area in disarray, printing the wrong film, and maintaining inks at incorrect viscosities. Def.'s Supp. Mem. Ex. 6.   Burton claims that he was not trained to check the proper print side and that the viscosity levels passed inspection.[6]   Pl.'s Supp. Mem. at 14.   Even assuming that Burton was improperly reprimanded for these actions, he does not deny that he left his print area cluttered and misplaced film rolls.   Burton has not established he was qualified for the position.

Burton contends that Bland told him at the September 4, 2002 disciplinary meeting to "stay in your place."   Burton Dep. 164:1-3.   Burton considers this comment to be motivated by historical discriminatory animus and that Bland told him to "forget about

---

[5] Although this was labeled Burton's "final" warning, he received several more warnings in 2003 before his eventual termination.

[6] Burton frequently refers to a document filed with the EEOC as an "affidavit."   Pl.'s Supp. Mem. Ex. B.   As this document was never notarized or sworn under penalty of perjury, the Court will not consider it as evidence.   *See* 28 U.S.C. § 1746 (2000).

8

the pressman position." Pl.'s Supp. Mem. at 15-16.  Bland
counters that he told Burton to stay seated because Burton was
screaming at him.  Bland Dep. 84:14-85:15.

Viewing this evidence in its most favorable light, the
circumstances surrounding the rejection of Burton's application
do not support an inference of discrimination.  Regarding the two
employees who were trained from within Amcor to be press
operators, Burton offers nothing more than his conclusion that he
could have been trained.  Burton also focuses on the hiring and
promotion of Douglas Crist in September 2002.  Burton argues that
despite Crist's past experience as a press operator, Burton was
equally qualified because Crist needed training at Amcor.  That
Burton could have been trained is not evidence upon which a
reasonable jury could conclude that Amcor's stated reasons for
hiring Crist--Burton's poor work and Crist's experience--were a
pretext for discrimination.

2. Hostile Work Environment

Burton also alleges that he was subject to a racially
hostile work environment at Amcor.  To establish a hostile work
environment claim under Title VII, Burton must demonstrate
harassment that was: (1) unwelcome; (2) based on race; (3)
sufficiently severe or pervasive to alter the conditions of
employment and create an abusive atmosphere; and (4) imputable to
Amcor.  *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).  A

hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted).

In making this determination, courts look to all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Hostile work environments generally result from "an accumulation of discrete instances of harassment," *Jordan v. Alternative Res. Corp.*, 458 F.3d 332 (4th Cir. 2006), but "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Amcor contends that Burton was not subject to severe or pervasive harassment. Burton contends that he was subjected to several racial slurs which were humiliating and demeaning, and taken together, constitute a hostile work environment.

Burton alleges that in August 2002 he heard someone state "Buckwheat" on two occasions as he entered an Amcor office. Burton Dep. 154:4-155:15. Burton reported these incidents to Ahrens, who then informed Bland of the comments. *Id.* Bland

10

investigated the comments, but was unable to determine whether the statements had been made.  Bland Dep. 79:5-12.  Burton explained that he had heard the term "Buckwheat" only on those occasions.  Burton Dep. 156:21.

Burton also complains of an incident when he disconnected a pressurized hose; the hose exploded, covering him and his work space in white ink.  Seeing his condition, several Amcor employees called Burton a "Whiteman."  Compl.; Burton Dep. 157:3-10.  Amcor contends that this was an isolated event, and Burton did not further address the incident in his Response to Amcor's Motion for Summary Judgment.

Burton contends that the work environment became more hostile after these incidents.  He notes a September 4, 2002 meeting at Bland's office when Bland told him to stay in his place and an incident in December 2002 where he was allegedly denied a respirator although a Caucasian employee received one.  Pl.'s Supp. Mem. at 22.  Viewing these incidents in the light most favorable to Burton, they are not the sufficiently pervasive or continuous pattern of discrimination required to establish a hostile work environment claim.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

3. Retaliation

Burton argues that he was denied a promotion and terminated for complaining about racial discrimination.  To establish a

prima facie case of retaliation under Title VII, Burton must demonstrate that: (1) he engaged in a protected activity; (2) Amcor acted adversely against him; and (3) there was a causal connection between the protected activity and the adverse action. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Burton's complaints to Amcor management and the charge filed with the EEOC are protected activities. *See Bryant v. Aiken Regional Med. Ctrs. Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003) (employees may not be punished for complaining about suspected Title VII violations). Additionally, Burton's failure to receive a promotion and his termination are adverse employment actions. *Id.* at 544. The parties dispute the causal connection between the adverse actions and the protected activities.

Burton contends that he did not receive a promotion to press operator because he raised the Buckwheat incident with Amcor management. Burton focuses on the disciplinary meeting with Bland on September 4, 2002, as evidence of Amcor's retaliation. At that meeting, Burton was disciplined for printing errors that occurred on his shift. That the comments and the disciplinary action happened within a close period is--alone-- insufficient to establish causation. Burton and his press operator were both disciplined for the actions that occurred during Burton's shift. More than this disciplinary action is necessary to establish the causal link between Burton's report of the "Buckwheat" comments

12

and Burton's failure to receive a promotion.  *See Lettieri v. Equant Inc.*, 478 F.3d 640, 650-51 (4th Cir. 2007) (evidence of recurring retaliatory animus during the intervening period may prove causation).

Burton also contends that Amcor retaliated against him for threatening to bring an EEOC charge.  Burton alleges that he was terminated after he provided a superior with a copy of his EEOC complaint, and was only reinstated after conferring with his counsel.  Although Burton was allowed to return to work, he was held off the printing room floor for several months after his April 16, 2003 hospitalization.  Pl.'s Supp. Mem. Ex. G.  On July 21, 2003, Burton became dehydrated at work and received emergency medical treatment for his condition.  Pl.'s Supp. Mem. at 7. Later that day, Burton met with Ahrens to discuss his condition, and Burton contends that he was respectful during this meeting. Several days later Burton left a voicemail message for Bland, stating that he would not wear the respirator for a continuous twelve-hour period.  *Id.*  On July 30, 2003, Burton was terminated by Amcor.

Amcor contends that Burton's pattern of poor attendance, poor performance, and insubordination led to his dismissal. After the disciplinary action in September 2002, Burton was warned about his poor attendance in March 2003 and his poor performance in April 2003.  Amcor contends that Burton's July 21,

13

2003 meeting with Ahrens was not amicable, and that Burton made vulgar comments about his superiors.  Amcor views Burton's subsequent voicemail as insubordination, as he stated that he would not wear a respirator even though his doctor required him to do so.  Thus, this pattern of misbehavior and insubordination led to the inevitable termination of Burton's employment on July 30.

Viewing Burton's interactions with Amcor and the disciplinary actions against him as a whole, a reasonable jury could conclude that Burton has established a prima facie case of retaliation.  The burden then shifts to Amcor to offer a legitimate nondiscriminatory reason for the termination.  Amcor's offer of Burton's poor performance and misbehavior satisfies its burden of production.

Burton must prove "that the defendant's non-retaliatory reason for the adverse employment action was pretextual." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 407 (4th Cir. 2005). Drawing all inferences in Burton's favor, a reasonable jury could conclude that Amcor's justification was pretextual.  Burton's dismissal immediately upon threatening to complain to the EEOC, subsequent reinstatement, and the two month period when he was not allowed on the print room floor following his reinstatement suggest that Amcor's rationale for Burton's termination was pretextual.  As a result, Amcor's motion for summary judgment on

retaliation will be denied.

C. Age Discrimination

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Courts have assumed that the Title VII framework applies in ADEA cases. *Reeves*, 530 U.S. at 142. Accordingly, an ADEA plaintiff may proceed under either the mixed-motive or pretext methods of proof. *Hill*, 354 F.3d at 284-85.

Burton must prove that: (1) he is a member of a protected class;[7] (2) there was an open position for which he applied; (3) he was rejected despite his qualifications and performance; and (4) the position was filled by a substantially younger individual with similar qualifications. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc).

Burton focuses primarily on the hiring and promotion of Douglas Crist, who was 39 years old when hired as a press assistant by Amcor in September 2002. Def.'s Supp. Mem. Ex. 5. Burton was 47 years of age then. Amcor's promotion process was informal, therefor Burton did not have to apply formally for the press operator position. But Crist had significantly more

---

[7] The ADEA protects "individuals who are at least 40 years of age." 29 U.S.C. § 631(a).

experience than Burton.  Crist had spent the previous 20 years working as a press operator.  Although Crist was eight years younger than Burton, a reasonable jury could not conclude that Amcor impermissibly discriminated on the basis of Burton's age.

Burton also argues that two younger Amcor employees were promoted to press operator while he was not.  He contends that they were given the opportunity to train as press operators, while he was not.  Burton alleges that discriminatory intent was shown by Bland's comments that Burton was "too old" and "senile" to become a press operator.  Burton Dep. 68:14.  By early September 2002, Burton had received a written warning for printing errors and maintenance mishaps that occurred on his shift.  Given Burton's performance and disciplinary record, he has not established that he was qualified for the position.  *See supra* Part II.A.1.  Drawing every reasonable inference in Burton's favor, a jury could not conclude that Amcor discriminated against Burton based on his age.

D. Disability Discrimination

The ADA prohibits an employer from discriminating "against a qualified individual with a disability."  42 U.S.C. § 12112(a).  An individual has a disability under the ADA if he has "a physical or mental impairment that substantially limits one or more of [his] major life activities."  *Id.* § 12102(2)(A).  To proceed under the ADA, Burton must demonstrate that: (1) he has a

16

physical or mental impairment;[8] (2) this impairment implicates a major life activity; and (3) the limitation is substantial. *Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006).  Both parties agree that Burton's sensitivity to chemicals and dyes is a physical impairment.  Burton's primary assertion is that he is substantially limited in the major life activity of working.[9]  Therefore, whether Burton is disabled under the ADA turns on whether his sensitivity to chemicals and dyes is substantially limiting.

The term "substantially limits" is "to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).  To be substantially limited in working

> one must be precluded from more than one type of job, a specialized job, or a particular job of choice.  If jobs utilizing an individual's skills . . . are available, one is not precluded from a substantial class of jobs.  Similarly,

---

[8] Burton also contends that because Bland stated that Burton was senile, Burton is substantially impaired in the major life activity of thinking.  Pl.'s Supp. Mem. at 24.  A reasonable jury could not conclude on the basis of this statement that Amcor regarded Burton as feebleminded.

[9] Major life activities are those "activities that are of central importance to human life." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).  The Fourth Circuit has assumed, without deciding, that working is a major life activity. *See Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 467 n.1 (4th Cir. 2002).

if a host of different types of jobs are available, one is

not precluded from a broad range of jobs.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999).

Burton contends that his chemical sensitivity limits his

ability to work in a broad range of jobs.  Burton asserts that

his sensitivity to solvents and acetone precludes employment as a

janitor, painter, or employee at a beauty salon.  He also claims

that his sensitivity to inks and solvents impedes his ability to

work with copiers and printers, like his job at Amcor.  Amcor

counters--and the Court agrees--that this list of jobs is not

broad enough to establish that Burton is substantially limited in

the major life activity of working.  There are many jobs at which

Burton could utilize leadership skills honed in 22 years of

military experience that do not involve using chemicals, inks, or

dyes.  *See* Burton Dep. 162:14-16.  Burton has not provided any

evidence that his chemical sensitivity would preclude him from

applying for and working at these jobs.

The parties cite two cases that address workplace chemical

sensitivities.  *See Shellenberger v. Summit Bancorp, Inc.*, 318

F.3d 183 (3d Cir. 2003); *Wright v. Tisch*, No. 86-0785-R, 1987 WL

109067 (E.D. Va. Oct. 20, 1987).  In both cases, employees who

suffered from physical reactions to air particles in the

workplace were held not to be disabled under the ADA.  *See*

*Shellenberger*, 318 F.3d at 185 (common fragrances and chemicals);

*Wright*, 1987 WL 109067 (dust).   Although Burton's sensitivity relates to particular solvents such as acetone, rather than the general chemical sensitivities claimed in those cases, his sensitivity does not substantially limit his ability to work in a broad range of jobs.   A reasonable jury could not conclude that Burton's physical impairment is disabling under the ADA.

III. Conclusion

For the reasons discussed above, Amcor's motion for summary judgment will be granted on Burton's racial discrimination, hostile work environment, ADEA, and ADA claims, and denied on his retaliation claim.


August 23, 2007                        _____/s/_____
Date                                   William D. Quarles, Jr.
                                       United States District Judge

19